```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY

EMPLOYERS INSURANCE            :    Civ. Action No. 05-4900(NLH)
COMPANY OF WAUSAU,             :
                               :
         Plaintiff,            :
                               :
    v.                         :    OPINION
                               :
HARLEYSVILLE INSURANCE         :
COMPANY OF NEW JERSEY,         :
                               :
         Defendant.            :
```

**APPEARANCES:**

Rebecca N. Reder, Esquire
Michael James Weiner, Esquire
Jaffe & Asher LLP
600 Third Avenue
9th Floor
New York, NY 10016

    *Attorneys for Plaintiff*

Karen A. Mascioli, Esquire
Crawshaw, Mayfield, Turner, O'Mara, Donnelly & McBride, P.C.
2201 Route 38
Suite 300
Cherry Hill, NJ 08002-4309

    *Attorney for Defendant*

**HILLMAN**, District Judge

    Presently before the Court are the parties' cross-motions for summary judgment in Plaintiff's action for a declaration of insurance coverage and reimbursement of attorney's fees. For the reasons expressed below, both parties' motions will be denied, and the action will be stayed.

**I.    BACKGROUND**

Plaintiff, Employers Insurance Company of Wausau ("Wausau"), has brought this action against Defendant, Harleysville Insurance Company of New Jersey ("Harleysville"), seeking a declaration that Harleysville has a duty to defend and indemnify Wausau's insured in an personal injury action pending in New Jersey state court.  Wausau is also seeking reimbursement of its attorney's fees and costs associated with defending the state court action as well as bringing this action.[1]

**A.    State Court Action**

On January 21, 2003, Michael Johnson, an employee at Seaman's Furniture, was injured when he slipped and fell on ice and snow when he was taking out trash to the dumpster behind the store.  On December 1, 2004, Johnson filed an action in the New Jersey Superior Court against Ackrik Associates ("Ackrik"), owner of the shopping center on Route 38 in Cherry Hill, New Jersey where Seamans was located, and ABC Corporations, the unknown entities responsible for the removal of snow and ice from the shopping center's parking lots, driveways and walkways.  On April 27, 2005, Johnson amended his complaint to specifically assert claims against Excell Maintenance Services, Inc. ("Excell"),

---

[1] Also pending before the Court is Harleysville's motion to amend/correct its motion for summary judgment.  Wausau does not oppose the motion.

2

which was under contract with Ackrik to provide snow and ice removal services. The state court action is still pending.

    **B.   Contract between Ackrik and Excell**

In September, 2002, Ackrik and Excell entered into a contract regarding snow removal services for the Route 38 Shopping Center. The contract provided that "You [Excell] will plow snow, as needed at your [Excell's] sole discretion and responsibility, in the entire parking lot, roadways, sidewalks and loading docks during any and all snow fall. . . . Salt will be spread when and where needed." (Pl.'s Ex. 2.) The contract also provided that Excell "maintain proper Workmen's Compensation Insurance as required by law," as well as "maintain General Liability Coverage of One Million ($1,000,000) Dollars and Automobile Insurance Coverage of Five Hundred Thousand ($500,000) Dollars." The contract further required that Excell provide Ackrik "with Certificates of Insurance evidencing such coverage within ten (10) days after the execution of this Contract naming Ackrik Associates on the policy as additional insured." The contract term was "November 1, 2002 through March 31, 2003."

    **C.   Insurance Policies**

        **1.   *Harleysville Policy***

Excell fulfilled its duty under the contract to obtain general liability coverage and name Ackrik as an additional insured. Excell obtained insurance from Harleysville, Commercial

Package Policy No. MPA-8E6323, with a policy period from May 1, 2002 to May 1, 2003.  The insuring clause in the policy provides, in relevant part,

> We [Harleysville] will pay those sums that the insured [Excell] becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.

(Pl.'s Ex. 11.)

The policy also contains an additional insured endorsement, which provides,

> Who Is An Insured is amended to include as an insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.  Such person or organization is an additional insured only with respect to liability arising out of your ongoing operations performed for that insured.  A person's or organization's status as an insured under this endorsement ends when your operations for that insured are complete.

(Id.)

The policy also contains an "Other Insurance" provision that provides that "[t]his insurance is primary," but it will be considered excess insurance in certain circumstances.  (Id.)

### 2. *Wausau Policy*

Wausau issued to Ackrik a Commercial General Liability Policy No. TBC-Y91-509212-022, with a policy period from January 31, 2002 to January 31, 2003.  The policy contains an "Other Insurance" provision, which provides that it is excess insurance

over "[a]ny other primary insurance available to you [Ackrik] covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement." (Pl.'s Ex. 7.)

### D. Tender of Defense

Believing that under the terms of the additional insured provision Harleysville was contractually required to provide Ackrik indemnity and defense in the underlying state court action, Wausau tendered Ackrik's defense and indemnity to Harleysville in a letter dated March 28, 2005. (Pl.'s Ex. 5.) Harleysville responded to Wausau's tender in a letter dated April 5, 2005, advising Wausau that it would not accept the tender and would not "defend, indemnify, and/or hold harmless your insured Ackrik Associates, or Wausau Insurance Company." (Pl.'s Ex. 6.) Harleysville explained, "As we were just recently put on notice for this loss, our investigation is incomplete. Once we complete our investigation, we will advise you if our position changes." (Id.) Harleysville has never accepted tender of the defense.

## II. DISCUSSION

### A. The Parties' Arguments

Wausau argues that Ackrik is entitled to coverage as an additional insured under the Harleysville policy because: 1) the Harleysville policy is primary and the Wausau policy is excess; 2) Excell agreed in writing to include Ackrik as an additional insured under its Harleysville policy; and 3) the claims arise

out of Excell's "ongoing operations" performed for Ackrik. Wausau also argues that the complaint in the underlying state court action triggered Harleysville's duty to defend and, as a result, Wausau should be entitled to attorney's fees and costs associated with bringing this action.

Harleysville argues that Ackrik is not entitled to coverage under the Harleysville policy for two reasons.  First, Harleysville claims that Johnson's accident did not arise out of any operations performed by Excell because it was customary for Seaman employees to remove the snow and ice in the area where Johnson fell.  Second, Harleysville argues that Johnson's accident did not arise out of the "ongoing operations" of Excell because Excell had completed its operations of removing the snow and ice from a January 17, 2003 snowfall.  Harleysville argues that Excell's operations were "completed" rather than "ongoing" because 1) there was no snowfall between that date and the date of Johnson's fall on January 21, 2003, other than a .01 inch of snow on January 20, 2003, 2) Excell had not been called back to the shopping center after January 17, and 3) there had been no complaints about Excell's snow and ice removal on January 17. Correspondingly, Harleysville argues that the complaint in the state court action did not trigger a duty to defend because Excell did not perform work where Johnson claims to have fallen.

As an initial matter, Wausau points out that Harleysville does not contest that the Harleysville policy is primary

6

insurance and that the Wausau policy is excess to that policy. Thus, the main issue of contention between the parties is whether Johnson's accident arose out of Excell's "ongoing operations." A corollary issue is whether the complaint in the underlying state court action triggered Harleysville's duty to defend.

    **B.    Whether Johnson's accident arose out of Excell's "ongoing operations."**

The parties agree that there is no New Jersey case interpreting the "ongoing operations" language contained in the additional insured endorsement in the Harleysville policy. The parties cite to a few cases from other states that have discussed similar issues, but there is no guidance under New Jersey state law, which governs the interpretation of the insurance policies at issue, as well as the contract between Ackrik and Excell. This lack of precedent is critical because it raises an issue not addressed by the parties--the effect of this Court's interpretation of the contracts on the concurrently pending state court action.

In order to answer the question of whether Johnson's accident arose out of Excell's ongoing operations, the maintenance contract between Ackrik and Excell must be interpreted. The contract provides that from November 1, 2002 through March 31, 2003, Excell "will plow snow, as needed at . . . [Excell's] sole discretion and responsibility, in the entire parking lot, roadways, sidewalks and loading docks during any and

7

all snow fall. . . . Salt will be spread when and where needed." This provision raises numerous questions: Does this language mean that every day from November through March it was Excell's sole responsibility to monitor the weather conditions and attend to the shopping center's parking lot, roadways, sidewalks and loading docks, and plow and salt as Excell deemed fit? Or, does this language mean that only snowfall triggered Excell's duty to plow and salt, and on the days it did not snow Excell had no obligation to monitor the shopping center's surfaces, thus causing Excell's operations to be "complete" after every plowing and salting and only "ongoing" while Excell was actively plowing and salting? Correspondingly, if this language means that only snowfall triggered Excell's duty to plow and salt, the question arises as to what amount of snow would alert Excell to its duty. Under Harleysville's argument, .01 inch would not trigger that duty, but would one inch or five? Additionally, it must be determined what surfaces Excell was obligated to care for. Was it all parking lots, roadways, sidewalks and loading docks, or all those areas except where it was customary for Seaman employees to shovel and salt?

  These are the same questions that presumably must be answered in the underlying state court action. Johnson has sued both Ackrik and Excell, and in order to determine whether Ackrik and/or Excell are liable for Johnson's alleged injuries, the contract between Ackrik and Excell must be interpreted. The

8

interpretation of the Ackrik/Excell contract then directly affects the determination of which insurance company is responsible for Ackrik's indemnity and defense.

If this Court were to answer the questions concerning the contract between Ackrik and Excell, the Court would be addressing unsettled issues of state law at the exact same time the state court is addressing the same issues. In cases where a district court must decide whether to hear declaratory judgment actions involving insurance coverage issues where the underlying state court action is concurrently pending, the Third Circuit has suggested three relevant considerations:

> 1. A general policy of restraint when the same issues are pending in a state court;
>
> 2. An inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion;
>
> 3. Avoidance of duplicative litigation.

State Auto Ins. Companies v. Summy, 234 F.3d 131, 134 (3d Cir. 2000) (citation omitted). District courts must also give "serious consideration to the fact that they do not establish state law, but are limited to predicting it," and that in cases where the state law involved is close or unsettled, "district courts should be particularly reluctant to entertain declaratory judgment actions." Id. at 135.

The Third Circuit further directs,

> In order to maintain the proper relationship between

>federal and state courts, it is important that district courts "step back" and allow the state courts the opportunity to resolve unsettled state law matters. . . . . . [T]he Declaratory Judgment Act confers a discretion on the courts rather than an absolute right on litigants. It follows that the state's interest in resolving its own law must not be given short shrift simply because one party or, indeed, both parties, perceive some advantage in the federal forum. When the state law is firmly established, there would seem to be even less reason for the parties to resort to the federal courts. Unusual circumstances may occasionally justify such action, but declaratory judgments in such cases should be rare.

Id. at 136 (citations omitted).

Here, although neither party raises the issue of whether the Court should hear this declaratory judgment action while the underlying state court action is pending, the Third Circuit's rationale in Summy requires that the Court consider it *sua sponte*. See id. (holding that in absence of a challenge, a court may decide the issue *sua sponte*). Preventing duplicative litigation and avoiding an insurance company's conflict of interests are important considerations, but the most compelling reason for this Court to consider whether to hear this declaratory judgment action is that the matters before both courts concern legal issues that the state court has yet to address. "The desire of insurance companies and their insureds to receive declarations in federal court on matters of purely state law has no special call on the federal forum." Id. Thus, because this action requires the Court to rule on an unsettled area of New Jersey law that the state court in the underlying

10

action must also consider, this Court will refrain from making such a ruling at this time.  See, e.g., The Scully Company v. Onebeacon Ins. Co., No. 03-cv-6032, 2004 WL 1166594, *2 (E.D. Pa. May 24, 2004)(staying insurance coverage declaratory judgment action because the issue before the court--whether the incident arose out of ongoing operations--was the same in the underlying state court action).

### III. CONCLUSION

For the reasons expressed above, the parties' motions for summary judgment will be denied, and the case will be stayed pending the resolution of the state court action.[2]  An appropriate Order will be entered.


Dated: January 31, 2007                s/ Noel L. Hillman

At Camden, New Jersey                  NOEL L. HILLMAN, U.S.D.J.

---

[2] "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."  Landis v. North American Co., 299 U.S. 248, 254-55 (1936).  "In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues."  Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am., 544 F.2d 1207, 1215 (3d Cir. 1976) (citing American Life Ins. Co. v. Stewart, 300 U.S. 203, 215 (1937)).

11