**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

EMPLOYERS INSURANCE          :     Civ. Action No. 05-4900(NLH)
COMPANY OF WAUSAU,           :
                             :
          Plaintiff,         :
                             :
     v.                      :     **OPINION**
                             :
HARLEYSVILLE INSURANCE       :
COMPANY OF NEW JERSEY,       :
                             :
          Defendant.         :

**APPEARANCES:**

Gregory E. Galterio, Esquire
Marshall T. Potashner, Esquire
Jaffe & Asher LLP
600 Third Avenue
9th Floor
New York, NY 10016

     *Attorneys for Plaintiff*

Karen A. Mascioli, Esquire
Mayfield, Turner, O'Mara, Donnelly & McBride, P.C.
2201 Route 38
Suite 300
Cherry Hill, NJ 08002-4309

     *Attorney for Defendant*


**HILLMAN**, District Judge

     Presently before the Court are the parties' cross-motions

for summary judgment in plaintiff's action for a declaration of

insurance coverage and reimbursement of attorneys' fees and

costs.  For the reasons expressed below, plaintiff's motion will

be granted and defendant's motion will be denied.

I.    **INTRODUCTION**

Plaintiff, Employers Insurance Company of Wausau ("Wausau"), has brought this action against Defendant, Harleysville Insurance Company of New Jersey ("Harleysville"), seeking a declaration that Harleysville has a duty to defend and indemnify Wausau's insured in an personal injury action that was brought in New Jersey state court.  Wausau is also seeking reimbursement of its attorneys' fees and costs associated with defending the state court action as well as bringing this action.  Harleysville is seeking a determination that it had no duty to defend or indemnify Wausau's insured.

These cross-motions are the parties' second summary judgment filings.  When considering the parties' first set of cross-motions, the Court denied the motions without prejudice and stayed the case pending the outcome of the underlying state court tort action brought by a personal injury plaintiff against Wausau's and Harleysville's insureds.  That course was taken because the parties' motions required the Court to rule on an unsettled area of New Jersey law that the state court in the underlying action was also required to consider.  The parties were directed to notify the Court when the underlying state court action was resolved, so that this action could be re-activated

2

and the parties' motions decided.  The state court action has now concluded, and the parties' motions are ripe for decision.

II.  **BACKGROUND**

The following background was included in the Court's prior opinion, and is helpful to restate here.

**A.    State Court Action**

On January 21, 2003, Michael Johnson, an employee at Seaman's Furniture, was injured when he slipped and fell on ice and snow when he was taking out trash to the dumpster behind the store.  On December 1, 2004, Johnson filed an action in the New Jersey Superior Court against Ackrik Associates ("Ackrik"), owner of the shopping center on Route 38 in Cherry Hill, New Jersey where Seamans was located, and ABC Corporations, the unknown entities responsible for the removal of snow and ice from the shopping center's parking lots, driveways and walkways.  On April 27, 2005, Johnson amended his complaint to specifically assert claims against Excell Maintenance Services, Inc. ("Excell"), which was under contract with Ackrik to provide snow and ice removal services.  The state court action has now settled.

**B.    Contract between Ackrik and Excell**

In September 2002, Ackrik and Excell entered into a contract regarding snow removal services for the Route 38 Shopping Center. The contract provided that "You [Excell] will plow snow, as needed at your [Excell's] sole discretion and responsibility, in

3

the entire parking lot, roadways, sidewalks and loading docks
during any and all snow fall. . . . Salt will be spread when and
where needed." (Pl.'s Ex. 2.) The contract also provided that
Excell "maintain proper Workmen's Compensation Insurance as
required by law," as well as "maintain General Liability Coverage
of One Million ($1,000,000) Dollars and Automobile Insurance
Coverage of Five Hundred Thousand ($500,000) Dollars." The
contract further required that Excell provide Ackrik "with
Certificates of Insurance evidencing such coverage within ten
(10) days after the execution of this Contract naming Ackrik
Associates on the policy as additional insured." The contract
term was "November 1, 2002 through March 31, 2003."

    **C.   Insurance Policies**

       **1.   *Harleysville Policy***

Excell fulfilled its duty under the contract to obtain
general liability coverage and name Ackrik as an additional
insured. Excell obtained insurance from Harleysville, Commercial
Package Policy No. MPA-8E6323, with a policy period from May 1,
2002 to May 1, 2003. The insuring clause in the policy provides,
in relevant part,

> We [Harleysville] will pay those sums that the insured
> [Excell] becomes legally obligated to pay as damages
> because of "bodily injury" or "property damage" to
> which this insurance applies. We will have the right
> and duty to defend the insured against any "suit"
> seeking those damages.

(Pl.'s Ex. 11.)

The policy also contains an additional insured endorsement, which provides,

> Who Is An Insured is amended to include as an insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.  Such person or organization is an additional insured only with respect to liability arising out of your ongoing operations performed for that insured.  A person's or organization's status as an insured under this endorsement ends when your operations for that insured are complete.

(Id.)

The policy also contains an "Other Insurance" provision that provides that "[t]his insurance is primary," but it will be considered excess insurance in certain circumstances.  (Id.)

### 2.   *Wausau Policy*

Wausau issued to Ackrik a Commercial General Liability Policy No. TBC-Y91-509212-022, with a policy period from January 31, 2002 to January 31, 2003.  The policy contains an "Other Insurance" provision, which provides that it is excess insurance over "[a]ny other primary insurance available to you [Ackrik] covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement."  (Pl.'s Ex. 7.)

### D.   Tender of Defense

Believing that under the terms of the additional insured provision Harleysville was contractually required to provide Ackrik indemnity and defense in the underlying state court

5

action, Wausau tendered Ackrik's defense and indemnity to
Harleysville in a letter dated March 28, 2005.  (Pl.'s Ex. 5.)
Harleysville responded to Wausau's tender in a letter dated April
5, 2005, advising Wausau that it would not accept the tender and
would not "defend, indemnify, and/or hold harmless your insured
Ackrik Associates, or Wausau Insurance Company."  (Pl.'s Ex. 6.)
Harleysville explained, "As we were just recently put on notice
for this loss, our investigation is incomplete.  Once we complete
our investigation, we will advise you if our position changes."
(Id.)  Harleysville never accepted tender of the defense.

## III. <u>DISCUSSION</u>

### A.   **The Parties' Arguments**

The parties' renewed cross-motions essentially make the same
arguments as before.  Wausau argues that Ackrik is entitled to
coverage as an additional insured under the Harleysville policy
because: 1) the Harleysville policy is primary and the Wausau
policy is excess; 2) Excell agreed in writing to include Ackrik
as an additional insured under its Harleysville policy; and 3)
the claims arise out of Excell's "ongoing operations" performed
for Ackrik.  Wausau also argues that the complaint in the
underlying state court action triggered Harleysville's duty to
defend and, as a result, Wausau should be entitled to attorneys'
fees and costs associated with defending the underlying action
and in bringing this action.

Harleysville argues that Ackrik is not entitled to coverage

6

under the Harleysville policy because Mr. Johnson's accident did
not arise out of the "ongoing operations" of Excell because
Excell had completed its operations of removing the snow and ice
from a January 17, 2003 snowfall.  Harleysville argues that
Excell's operations were "completed" rather than "ongoing"
because 1) there was no snowfall between that date and the date
of Johnson's fall on January 21, 2003, other than a .01 inch of
snow on January 20, 2003, 2) Excell had not been called back to
the shopping center after January 17, and 3) there had been no
complaints about Excell's snow and ice removal on January 17.[1]
Correspondingly, Harleysville argues that the complaint in the
state court action did not trigger a duty to defend because
nothing in Mr. Johnson's complaint "indicates that Excell's work
of January 17, 2003 was still 'ongoing' when Michael Johnson fell
four days later on January 21, 2003."  (Def. Br. at 10.)

As an initial matter, Wausau pointed out in the parties'
prior briefing that Harleysville does not contest that the
Harleysville policy is primary insurance and that the Wausau
policy is excess to that policy.  Thus, the main issue of
contention between the parties is whether Mr. Johnson's accident
arose out of Excell's "ongoing operations."  A corollary issue is

---

[1]In its prior motion, Harleysville argued that Excell did
not have an obligation to perform its services in the area where
Mr. Johnson fell.  In the underlying state court action, the
state court judge determined that the area in which Mr. Johnson
fell was included in the service area provided for in Excell's
contract with Ackrick.

whether the complaint in the underlying state court action triggered Harleysville's duty to defend.

Even though the duty to defend is broader then the duty to indemnify, Rosario ex rel. Rosario v. Haywood, 799 A.2d 32, 40 (N.J. Super. Ct. App. Div. 2002) (citation omitted), and it is the nature of the damage claim, rather than the ultimate liability of the insurer, that determines whether the insurer is obliged to defend, Hofing v. CNA Ins. Companies, 588 A.2d 864, 867-68 (N.J. Super. Ct. App. Div. 1991), it is the "obligation to indemnify, either actual or potential, which invokes the duty to defend," Sears Roebuck and Co. v. National Union Fire Ins. Co. of Pittsburgh, PA, 774 A.2d 526, 538 (N.J. Super. Ct. App. Div. 2001).  Thus, "when the allegation in the underlying complaint triggering the duty to defend is determined to be groundless, the duty to defend dissipates unless there remains other viable grounds for coverage."  Sears, 774 A.2d at 538.  Accordingly, the Court will first determine whether Harleysville had a duty to indemnify prior to determining whether it had a duty to defend.

**B.   Whether Harleysville had a duty to indemnify**

When the parties filed their motion papers, they agreed that there was no New Jersey case interpreting the "ongoing operations" language contained in the additional insured

endorsement in the Harleysville policy.[2]  The parties cite to a
few cases from other states that have discussed similar issues,
but there was no guidance under New Jersey state law, which
governs the interpretation of the insurance policies at issue, as
well as the contract between Ackrik and Excell.  It was this lack
of precedent that led this Court to stay the action pending the
state court's resolution of the case--if this Court had answered
the questions concerning the contract between Ackrik and Excell,
the Court would have been addressing unsettled issues of state
law at the exact same time the state court was addressing the
same issues.  Now that the state court action has settled, the
Court is not faced with that concern, and the issue may be
decided.

     As a primary matter, it must be noted that in New Jersey,
insurance contracts are subject to special rules of
interpretation because they are contracts of adhesion.  Zacarias
v. Allstate Ins. Co., 775 A.2d 1262, 1264 (N.J. 2001) (citations
omitted).  When there is ambiguity, the insurance policy should
be interpreted to "comport with the reasonable expectations of
the insured, even if a close reading of the written text reveals
a contrary meaning."  Id. (citations omitted).  Even in the

---

     [2]As discussed below, since the filing of the parties' cross-
motions, the New Jersey Appellate Division has recently looked at
the "ongoing operations" language in Hartz Mountain Industries,
Inc. v. Preserver Ins. Co., 2008 WL 351244, *5-6 (N.J. Super. Ct.
App. Div. Feb. 11, 2008).

absence of ambiguity, however, "[u]nder certain circumstances, . . . the plain meaning of policy language may be overcome if it conflicts with the reasonable expectations of the insured." Am. Motorists Ins. Co. v. L-C-A Sales Co., 713 A.2d 1007, 1013 (N.J. 1998) (citation omitted).  If an insurance policy's terms are capable of supporting two distinct outcomes as to whether there is coverage, "the subject language must be interpreted in favor of the insured."  Mazzilli v. Accident & Cas. Ins. Co. of Winterthur, Switzerland, 170 A.2d 800, 803 (N.J. 1961).  "Courts are bound to protect the insured to the full extent that any fair interpretation will allow."  Id.

Here, the question that must be answered is whether "the cause of the injury, although neither expected nor foreseen, was in the contemplation of the parties to the insurance contract a natural and reasonable incident or consequence of the . . . risk against which they may reasonably expect those insured under the policy would be protected."  Sears, 774 A.2d at 533.  In other words, the question that must be answered is whether Ackrick, by virtue of being an additional insured under Excell's insurance, expected to be insured for Mr. Johnson's injuries.  To answer that question, the maintenance contract between Ackrik and Excell must be interpreted.

The contract provides that from November 1, 2002 through March 31, 2003, Excell "will plow snow, as needed at . . . [Excell's] sole discretion and responsibility, in the entire

10

parking lot, roadways, sidewalks and loading docks during any and all snow fall. . . . Salt will be spread when and where needed." Harleysville argues that under its interpretation of "ongoing" in the additional insured clause in its insurance policy issued to Excell, Excell's operations were completed, and not ongoing, and because its operations were not ongoing, Mr. Johnson's claims would not fall within the purview of coverage.  One of Harleysville's arguments for why Excell's service was not ongoing is that only .01 inch of snow fell between Excell's last plow and salt and Mr. Johnson's fall, and that Excell was not under an obligation to monitor the parking lot in the absence of snowfall. Harelyesville further argues that because Excell was not actively plowing and salting on the day Mr. Johnson fell, its operations were not ongoing.

Harleysville's argument is unpersuasive because it improperly focuses on whether, at the time of an accident, Excell was actively plowing and salting, and whether there was a sufficient amount of snow to trigger the need for plowing and salting in the first place.  Under Harleysville's argument, its policy only covers Ackrick for injuries occurring while Excell is in the process of plowing and salting an unspecified, yet sufficient, amount of snow.  This interpretation, if adopted, would effectively subject insurance coverage to the whims of the weather, and to the speed and competence of Excell's plowing.

11

Instead, the proper focus should be on whether an injury "arose out of" Excell's "ongoing operations." The additional insured provision in the Harleysville policy provides coverage "with respect to liability arising out of [Excell's] ongoing operations performed for that [Ackrick]." Simply looking at the "ongoing operations" language independent of the "arising out of" language impermissibly narrows the policy coverage.

Looking at the additional insured endorsement as a whole, it is clear that even though Mr. Johnson's accident did not occur at the time Excell was plowing and salting Ackrick's property, or even on the day that the snow fell, but rather four days later, Mr. Johnson's fall arose out of Excell's ongoing obligation to plow and salt. Here is why:

1.    The term of Ackrick's contract with Excell spanned from November 1, 2002 through March 31, 2003. Thus, Excell's operations for Ackrick--to plow and salt as needed--were ongoing from November 1, 2002 through March 31, 2003. If Excell's operations were "complete" after the plowing and salting of each and every discrete snowfall, the contract term from November through March would be rendered meaningless.

2.    The additional insured endorsement provides, "A person's or organization's status as an insured under this endorsement ends when your operations for that insured are complete." If Excell's operations were "complete" after the

12

plowing and salting of each and every discrete snowfall, Ackrick
would not have had insurance coverage following the first
snowfall after November 1, 2002.  This result was not
contemplated by the parties.

3.   The term "arising out of" in additional insured
provisions is broadly construed in New Jersey.  The New Jersey
Appellate Division recently explained,

> We have considered the meaning of the phrase
> "arising out of" in insurance policies.  In Westchester
> Fire we stated that the phrase did not justify a
> requirement that "the injury is a direct and proximate
> result, in a strict legal sense, of the" insured risk.
> Rather, "the phrase 'arising out of' must be
> interpreted in a broad and comprehensive sense to mean
> 'originating from' or 'growing out of'" the insured
> risk.
>
> "So interpreted, there need be shown only a
> substantial nexus between the injury and the [insured
> risk] in order for the obligation to provide coverage
> to arise.  The inquiry should be whether the negligent
> act which caused the injury, although not foreseen or
> expected, was in the contemplation of the parties to
> the insurance contract a natural and reasonable
> incident or consequence of the [insured risk], and thus
> a risk against which they might reasonably expect those
> insured under the policy would be protected. Whether
> the requisite connection or degree of relationship
> exists depends upon the circumstances of the particular
> case."

Hartz Mountain Industries, Inc. v. Preserver Ins. Co., 2008 WL
351244, *5-6 (N.J. Super. Ct. App. Div. Feb. 11, 2008) (citing
and quoting Westchester Fire Insurance Co. v. Continental
Insurance Cos., 312 A.2d 664 (N.J. Super. Ct. App. Div. 1973),
aff'd 319 A.2d 732 (N.J. 1974)); see also Federal Home Loan

Mortgage Corp. v. Scottsdale Ins. Co., 316 F.3d 431, 444 (3d Cir.
2003) ("New Jersey courts have given a broad and liberal
interpretation to common insurance policy language pertaining to
coverage for additional insured parties for injuries 'arising
of' work performed by the main policyholder.").

5.   Based on the New Jersey courts' interpretation of
"arising out of," Mr. Johnson's fall on the ice arose out of
Excell's contract with Ackrick to salt and plow as needed from
November 1, 2002 through March 31, 2003.  Ackrick asked to be an
additional insured on Excell's insurance policy because it did
not want to be liable for injuries "originating from" or "growing
out of" snow and ice under the care of Excell during that time
period.  Mr. Johnson fell in an area that Excell was obligated to
salt and plow.  Thus, it was the contemplation of the parties
that Excell's insurance policy would protect Ackrick from such a
risk.

6.   The only New Jersey court to substantively address the
"ongoing operations" provisions in an additional insured
provision supports the finding that Mr. Johnson's injuries arose
out of Excell's ongoing operations.  In Hartz Mountain
Industries, Inc. v. Preserver Ins. Co., 2008 WL 351244, *5-6
(N.J. Super. Ct. App. Div. Feb. 11, 2008), a snowplow company was
under contract with a property owner to perform snow and ice
removal.  As part of that contract, the snowplow company was

14

required to name the property owner as an additional insured on its insurance policy.  The additional insured provision provided,

> Section II--Who Is An Insured is amended to include as an insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability arising out of your ongoing operations performed for that insured. A person's or organization's status as an insured under this endorsement ends when your operations for that insured are completed.

The accident that triggered the insurance dispute occurred on January 7, 2003.  At 5:00am that morning, the property owner notified the snowplow company of icy conditions on the property. At 6:00am the snowplow company began salting the premises, but ran out of salt before the entire property was salted.  The snowplow truck left the site to reload its truck, and while it was gone, an employee of a bank located on the property slipped and fell on black ice as she was walking on an unsalted roadway. When the snowplow returned, the driver saw an ambulance on the scene.

The bank employee sued the property owner, who tendered its defense to the insurance company which provided the additional insured policy to the snowplow company.  The insurance company refused the tender and refused to indemnify.  The underlying

15

personal injury case was settled, and the property owner then
sued the insurance company in a declaratory judgment action for
defense and indemnification.  The trial court found in favor of
the insurance company, but the appellate division reversed.

The appeals court noted that in New Jersey insurance
policies should be broadly construed in favor of the insured and
that "arising out of" language is also interpreted broadly.  In
finding for the property owner, the court explained,

> When Gage fell on black ice, Hirth [the snowplow
> operator] was in the midst of salting Hartz's property
> to melt ice in order to render the roadways, driveways
> and parking stalls and aisles safe for driving and
> walking and had failed to salt all roadways and
> driveways before salting some parking areas. Had Hirth
> salted all roadways and driveways before any parking
> areas, which it clearly could have accomplished because
> they comprised less than half of the work, the driveway
> on which Gage fell would have been salted before Hirth
> went to reload his truck. Thus, it seems abundantly
> clear that Gage's injuries had a substantial nexus to
> Hirth's ongoing operations performed for Hartz. The
> fact that Hirth was not on the property at the moment
> of the accident is not determinative. Coverage for
> Hartz as an additional insured had not ended because
> Hirth's operations were not yet complete. They were
> only interrupted to reload with more salt. Even if the
> phrase "arising out of" is ambiguous, the phrase must
> be construed in favor of the insured, that is, in favor
> of coverage. Voorhees v. Preferred Mut. Ins. Co., 128
> N.J. 165, 175 (1992). Thus, Hartz was entitled to a
> defense and indemnification under the Preserver policy
> as an additional insured. The issue of whether Hirth
> was or was not negligent has no bearing on Hartz's
> status as an additional insured under the Preserver
> policy.

Hartz Mountain, 2008 WL 351244 at *6.

7.    The Hartz case supports the Court's interpretation of
the additional insured provision in this case.  Although it is
unclear whether the contract in Hartz spanned the winter season,
similar to the contract here, the snowplow company in Hartz
contracted with the property owner to remove snow and ice from
all roads, parking lots and driveways.  Also similar to the case
here, the property owner in Hartz was an additional insured on
the snowplow company's insurance policy, and that policy contains
identical language to the Harleysville policy.  In determining
whether the property owner was entitled to indemnification and
defense for the slip and fall, the court in Hartz did not only
focus on whether the snowplow operations were ongoing, but also
considered whether the slip and fall "arose out of" those
snowplow operations.

Even though the court in Hartz did not need to consider the
scenario presented here--where the snowplow company failed to
salt an icy area it was required to salt, and a person fell on
that unsalted ice a few days later--the holding of Hartz could be
applied to such a scenario.  When a snowplow company does not
fulfill its obligation to salt the areas it is required to salt
under the contract, its operations cannot be rendered "complete."
If someone falls and injures herself on that unsalted ice, that
injury has a substantial nexus--i.e., arises out of--those not-

yet-complete--i.e., ongoing--operations of the snowplow company. The same analysis can be applied in this case.

Consequently, for the foregoing reasons, the Court finds that Mr. Johnson's injuries arose out of Excell's ongoing operations for Ackrick.  As such, Ackrick is entitled to indemnification as an additional insured on the Harleysville policy.

**C.   Whether the state court complaint triggered Harleysville's duty to defend**

It must next be determined whether Harleysville had a duty to defend Ackrick.  The duty to defend is broader then the duty to indemnify.  Rosario ex rel. Rosario v. Haywood, 799 A.2d 32, 40 (N.J. Super. Ct. App. Div. 2002) (citation omitted).  An insurer's duty to defend an action against its insured is measured by the allegations contained in the complaint.  Hofing v. CNA Ins. Companies, 588 A.2d 864, 867-68 (N.J. Super. Ct. App. Div. 1991) (citing Ohio Cas. Ins. Co. v. Flanagin, 210 A.2d 221 (N.J. 1965)) (other citations omitted).  More specifically,

> The duty to defend arises when the complaint states a claim constituting a risk falling within the purview of the policy language.  If the pleadings state facts bringing the injury within the coverage of the policy, the insurer must defend regardless of the insured's ultimate liability to the complainant.  The nature of the damage claim, rather than the actual details of the accident or the ultimate liability of the insurer, determines whether the insurer is obliged to defend.

18

Id. (citations omitted).  Thus, the sole issue in determining whether Harleysville had a duty to defend is whether the allegations in Michael Johnson's state court complaint triggered that duty.

Harleysville states that the additional insured endorsement provided coverage to Ackrick, as an additional insured, "only with respect to liability arising out of [Excell's] ongoing operations performed for [Ackrick]."  Accordingly, Harleysville argues that the complaint in the state court action did not trigger a duty to defend because nothing in Mr. Johnson's complaint "indicates that Excell's work of January 17, 2003 was still 'ongoing' when Michael Johnson fell four days later on January 21, 2003."  (Def. Br. at 10.)   Harleysville's argument was unavailing with regard to its duty to indemnify, and it is similarly unavailing with regard to its duty to defend.

Mr. Johnson's complaint alleged that the defendants, which included Ackrick, owed a duty of care to maintain its premises in a reasonably safe condition.  (State Ct. Compl. ¶ 3.)  Mr. Johnson claimed that on January 21, 2003, while walking on Ackrick's premises, he slipped and fell on a snow and ice-covered surface, causing him to sustain severe and permanent injuries. (Id. ¶ 5.)  Mr. Johnson claimed that Ackrick, through its servants, agents and employees, caused these injuries because it

19

negligently and carelessly failed to, among other things, "Repair
or correct any unsafe or hazardous walking conditions caused by
an accumulation of snow and ice," and "Empoy[], hire[] or
engage[] persons or entities which defendant knew or should have
known were incapable of performing in a safe and timely manner
the duties of maintaining the walkways, driveways and/or parking
lots in a safe and snow and ice-free condition."  (Id. ¶ 4.)

These allegations in the complaint were sufficient to
trigger Harleysville's duty to defend.  Mr. Johnson alleged that
Ackrick, or whomever Ackrick hired, failed to properly remove the
ice and snow from the area in which Mr. Johnson fell.  Even
though not mentioned by name, Mr. Johnson specifically referenced
the entity which was responsible for the removal of ice and snow
on the Ackrick property, and the failure to remove that ice and
snow was the alleged cause of Mr. Johnson's injuries.  Ackrick
had a contract with Excell that required Excell to "plow snow, as
needed at [Excell's] sole discretion and responsibility, in the
entire parking lot, roadways, sidewalks and loading docks during
any and all snow fall. . . . Salt will be spread when and where
needed."  Mr. Johnson alleged, by reference to Ackrick's
"servants, agents and employees," that Excell's failure to plow
and salt caused his injuries.  Thus, the allegations in Mr.
Johnson's complaint come within the purview of Excell's contract

with Ackrick, and, correspondingly, come within the purview of Excell's additional insured policy with Harleysville.

Harleysville argues, however, that under its interpretation of "ongoing" in the additional insured clause in its insurance policy issued to Excell, Excell's operations were completed, and not ongoing, and because its operations were not ongoing, Mr. Johnson's claims would not fall within the purview of coverage. As explained above, Harleysville interpretation of the additional insured provision is too narrow, as it fails to contemplate the "ongoing operations" language in conjunction with the "arising out of" language, and because it fails to fulfill the reasonable expectations of Ackrick and Excell.

Consequently, the Court finds that Harleysville had a duty to provide a defense to Ackrick in the underlying state court action.

## IV. <u>CONCLUSION</u>

For the reasons expressed above, Wausau's motion for summary judgment is granted and Harleysville's motion is denied.  Wausau is entitled to be indemnified for the $30,000 it paid as part of the settlement in the underlying action.  Wausau is also entitled to be reimbursed for its attorneys' fees and costs associated

with defending the state court action, as well as bringing this action.[3]  An appropriate Order will be entered.

Date: August 26, 2008                    s/ Noel L. Hillman

At Camden, New Jersey                    NOEL L. HILLMAN, U.S.D.J.

---

[3]Harleysville contests the reasonableness of Wausau's attorneys' fees.  As directed in the accompanying Order, Harleysville may challenge the reasonableness of those fees in response to Wausau's submission of a proposed form of judgment and certification of attorneys' fees and costs.